IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

\- - -

PRINCETON DIGITAL IMAGE CORPORATION, : CIVIL ACTION NO.

Plaintiff, :

v. :

KONAMI DIGITAL ENTERTAINMENT, INC., HARMONIX MUSIC SYSTEMS, INC., and ELECTRONIC ARTS, INC., : 12-1461-LPS-CJB

Defendants.

\- - -

Wilmington, Delaware
Thursday, August 25, 2016
*Telephone Conference*

\- - -

BEFORE: HONORABLE **CHRISTOPHER J. BURKE**, Magistrate Judge

\- - -

APPEARANCES:

O'KELLY & ERNST, LLC
BY: DANIEL P. MURRAY, ESQ.

and

KENYON & KENYON, LLP
BY: MICHAEL N. ZACHARY, ESQ.
(Palo Alto, California)

and

KENYON & KENYON, LLP
BY: JOHN R. HUTCHINS, ESQ.
(Washington, District of Columbia)

Counsel for Plaintiff

Brian P. Gaffigan
Registered Merit Reporter

APPEARANCES: (Continued)

MORRIS NICHOLS ARSHT & TUNNELL, LLP
BY: RODGER D. SMITH, II, ESQ.

and

FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
BY: LINDA J. THAYER, ESQ.
(Boston, Massachusetts)

Counsel for Electronic Arts Inc., and Harmonix Music Systems, Inc.

MORRIS NICHOLS ARSHT & TUNNELL, LLP
BY: RODGER D. SMITH, II, ESQ.

and

MORRISON & FOERSTER, LLP
BY: BENJAMIN J. FOX, ESQ., and
RYAN J. MALLOY, ESQ.
(Los Angeles, California)

Counsel for Konami Digital Entertainment, Inc.

- oOo -

P R O C E E D I N G S

(REPORTER'S NOTE: The following telephone conference was held in chambers, beginning at 11:01 a.m.)

THE COURT: Good morning, counsel. It's Judge Burke here. Before we begin today, let me just say a few things for the record.

The first is that we're on the record here for a discovery dispute teleconference in the matter of Princeton Digital Image Corporation versus Konami Digital Entertainment Inc. eight al, Civil Action No. 12-1461-LPS-CJB in our court. And because we're here on the record, I have with me a court reporter from Chief Judge Stark's chambers who will be taking down our call today. In light of that, I'd ask counsel on the line to identify themselves clearly before they speak to make sure we get a good and accurate record of our call this morning.

Let me also have counsel begin our call by identifying themselves for the record. Why don't we start with counsel for the plaintiff's side, and we'll begin with Delaware counsel.

MR. MURRAY: Good morning, Your Honor. This is Daniel Murray of O'Kelly & Ernst on behalf of plaintiff Princeton Digital Image Corporation. Also on the line on behalf of plaintiff is John Hutchins and Michael Zachary of

the Kenyon & Kenyon firm.

As a matter of housekeeping right up front, Your Honor, Mr. Hutchins's pro hac vice motion was filed yesterday, has not yet been entered by the Court, but with your permission, I would ask that Mr. Hutchins and Mr. Zachary address the Court on behalf of plaintiff today.

THE COURT: Okay. Thank you, Mr. Murray. I'll grant that request. And as to the pro hac motion, it may simply be that because of how recently it was filed, that is the reason it wasn't officially entered. So long as the rules are complied with and the fee is paid, it will be entered.

In any event, for purposes of our call, Mr. Hutchins can surely address the Court along with Mr. Zachary.

Who is on the line for the defendants' side?

MR. SMITH: Good morning, Your Honor. Rodger Smith from Morris Nichols, on behalf of all the defendants.

I'm joined on behalf of Konami by my colleagues at Morrison & Foerster, Ryan Malloy and Ben Fox.

And on behalf of the Harmonix and Electronic Arts defendants, I'm joined by Linda Thayer from Finnegan Henderson.

THE COURT: Good morning to you all as well.

All right. Counsel, I guess by way of setting

the table, on a prior call in which we were set to address discovery disputes that related to the plaintiff and defendant EA Harmonix as well as discovery disputes that related to plaintiff and defendant Konami, we simply ran out of time after getting through the EA and Harmonix issues and I subsequently issued an order resolving those issues. So we set up a call for today to address the discovery disputes that plaintiff had raised as to Konami and that Konami had raised as to plaintiff.

So my intention would be to go through those today. As I understood them, with respect to plaintiff's request, it was a request for the production of core technical documents from certain affiliated Konami foreign entities or allegedly affiliated foreign entities that the plaintiff asserts Konami controls.

And then with regard to Konami's request, I understood there to be two issues: one that Konami sought more clear and supplemental infringement contentions and that Konami was objecting to the plaintiff producing representative claim charts as to two different categories of games as opposed to claim charts for each individual game accused.

I guess my first question is, and this is to both sides, in light of the passage and time and the Court's resolution of some issues in the EA and Harmonix case, are

all three of these issues still live or would the parties say that we need to address just some subset of them? On plaintiff's side.

MR. ZACHARY: Your Honor, this is Michael Zachary.

With respect to the parent/subsidiary issue and whether Konami has to produce core technical documents from an affiliated entity, that issue is still live.

With respect to the infringement contentions, the Court ordered us to provide or our client to provide infringement contentions with respect to Harmonix supplemental contentions. Those have been provided.

And Konami's counsel has asked us to provide contentions, similar contentions for their client; and we are in the process of doing that, but that has not yet been completed, but our plan is to comply with the Court's Order with respect to Harmonix and apply it to Konami as well.

THE COURT: Do you understand, Mr. Zachary, I guess the second or subsidiary issue of do we have to provide contentions as to each game, do you understand that still to be a disputed issue?

MR. ZACHARY: I don't know if it is disputed or not. I didn't think it was. I thought -- but maybe it is. Maybe we should hear from defense counsel on that.

THE COURT: Okay. Fair enough. On defendant's

side, any clarity that you can provide on these questions?

(Unidentified speaker): Yes.

MS. THAYER: Yes, Your Honor. This is Linda Thayer with respect to Harmonix and EA.

We can say that plaintiff did provide supplemental infringement contentions, but in our opinion, they are still deficient for the following reasons:

During our call last time, as the Court correctly identified, there are at least three categories of products:

There are the console games which Harmonix bears primary responsibility for as they were developed by Harmonix and EA publish is done.

There are some mobile games which Electronic Arts developed themselves, and they licensed artwork from Harmonix. And,

There is a third category which you identified during the last call of a mobile game that Harmonix has.

We got a supplemental chart which has the console game and then a second chart for mobile games by Harmonix and EA, and they're marked "attorneys' eyes only" and they're two separate clients. So we are at a little bit of a loss here because we can't give one chart to EA without -- I mean they mixed EA and Harmonix's products. They don't address them separately.

So at a minimum, we were expecting there would be three charts in total. The first representative of the console game, we agree with that, and not each product separately. But at a minimum, for the non-console games by Harmonix and EA, it should be two additional charts and we received only one.

THE COURT: Okay. Actually, I apologize, Ms. Thayer. When I was referring to defendant, I meant defendant Konami in the main. This call is meant to address disputes between Konami and the plaintiff and vice versa.

It's not to say that I won't hear from EA and Harmonix's counsel, but, for example, the issue you raised, is this one that you have addressed with plaintiff's counsel? Are they aware of it? Has it risen to the level of a dispute that the Court needs to involve itself with at this stage?

MS. THAYER: No, we're in the process of responding to them on that. So it is fair to say they don't know of our concern on that regard. But they just represented that they believe they fully complied; and the Court said -- was asking whether this was a dead issue or a live issue, and I just wanted to say that it is not a completely dead issue.

I understand that the bulk of this call will be on the Konami issues, because they didn't get their time

last time, so I'm happy to wait until the end and let you proceed with Konami.

THE COURT: Okay. Thank you. Yes. And obviously in the main, I need to try to use these calls as a chance to try to vet and decide the issues that have been properly teed up that have been addressed between counsel by both sides, and so in the main I'm going to do that.

At the end, I'll circle back, just ask if there is any other clarity I need to provide or if there are any issues we need to briefly discuss.

So turning back to Konami's counsel. And, again, I think I'm asking probably particularly the parent subsidiary issue is still a live one.

With regard to what were Konami's discovery disputes directed towards plaintiff, can defendant's counsel give me some clarity as to whether one or both of those are still live?

MR. FOX: Thank you, Your Honor.

MR. MALLOY: Sure, Your Honor. This is Ryan Malloy from Morrison & Foerster.

I think there is still a live issue, and I think it can probably be resolved very simply.

The background is that there are 20 accused Konami games in this lawsuit and they're in two series: the Karaoke Revolution series and the Dance Dance Resolution

series.

The plaintiff's position is that all the games within a series are the same for infringement purposes. Since plaintiff can simply state that on infringement contentions, we don't need 20 sets of duplicative claim charts. But what we're concerned about is the possibility that plaintiff may contend that there are game specific features that are relevant to the infringement contentions. If so, we believe that plaintiff should identify those. So we don't currently know what position plaintiff is taking, and perhaps plaintiff's counsel could address that on this call.

THE COURT: Okay. Why don't we then just turn to this issue first.

I understand that, Mr. Malloy, as to the issue of supplemental infringement contentions, the plaintiff has indicated that it intends to provide them in light of the Court's Order with regard to the EA and Harmonix case, and presumably in the spirit of that order, with that commitment from plaintiff, is there anything more defendant requests of me at this stage on that issue?

MR. MALLOY: On the issue of specificity, we think that the Order with respect to Harmonix is fine. That is exactly what we're looking for.

THE COURT: Okay. Can I rely on counsel to --

MR. MALLOY: We would like some clarity as to whether there are any game specific features that plaintiff contends are relevant to its infringement contentions or whether it is really the case that plaintiff contends that all the games bear the same features and we just need to rely on those features that are in the game.

THE COURT: As to the issue with regard to greater specificity and supplemental contentions, can I rely on counsel to work together to agree on a mutually agreeable date for plaintiff to supplement those in your view?

MR. MALLOY: Well, we would like a date certain for plaintiff to provide the contentions.

The Court's Order with respect to Harmonix was issued on August 4, and that has been several weeks, and we think there is no reason that it should take longer than a week for plaintiff to provide amended contentions for Konami.

THE COURT: Mr. Zachary, back to you on these issues I guess first.

How long do you need to provide supplemental contentions as to Konami?

MR. ZACHARY: Your Honor, this is Michael Zachary.

I had talked to my team about that issue. And we have, of course, many other things going on in this case and other cases at the same time, but my team says that they

can have the contentions done by September 7th.

THE COURT: Okay. That's reasonable. So I'll allow that and set a date certain of September 7th for the production of those supplemental contentions.

Mr. Zachary, as to the second issue, and that is that, as I understand it, defendants would determine that a statement in your contentions that you believe the representative product called out is in fact representative of other games would be sufficient unless you were arguing that there are certain game specific components that matter for infringement purposes.

What is your response to that inquiry?

MR. ZACHARY: Your Honor, I believe the contentions already contain a statement that the products operate in substantially, at least within one particular video game line, operate in substantially the same way.

So, I mean we, for purposes of the infringement contentions served as a preliminary set, that was our intention. I don't understand that that has changed in any way, but, of course, as we get or if we obtain additional information, I think if we have obtained additional information that there are game specific features based upon any further production on Konami, then I don't see why we wouldn't include that in the contentions. But as of now, and as of when we served the initial set, I think we said that all of them operate in

substantially the same way.

THE COURT: You did I think on pages one and two of the cover sheet for your contentions.

So plaintiff's representation is this: With regard to the information that it has and possesses about the games, it is not currently alleging that there are game specific features that make a difference for infringement purposes. It will, to the extent it obtains information that suggests it needs to supplement infringement contentions in that regard, it will. And to the extent I guess that defendant would later claim it doesn't think plaintiff should be able to later supplement or has untimely supplemented, et cetera, that is an issue that would come up down the line.

Is that a fair summary as to how I should look at it from your perspective?

MR. ZACHARY: From plaintiff's perspective, yes, Your Honor.

THE COURT: Mr. Malloy, is there any reason why we should not take that tact at this stage, in light of the representations from plaintiff's counsel?

MR. MALLOY: No, Your Honor.

THE COURT: Then that is how we'll handle that issue. That defendant's request for separate contentions with regard to each game is mooted for now in light of plaintiff's representation that it is not currently alleging

that -- and doesn't have information to allege that any game specific feature as to those 20 games makes a difference for infringement purposes. Plaintiff understands that it has the requirement to supplement its infringement contentions if it feels they are deficient in that regard.

As we go forward, particularly if they receive additional information suggesting that supplementation is warranted, if there is any dispute with regard to such supplementation, the Court can always address it at that point.

So I think that leaves us with what was plaintiff's request, and that is the request that Konami produce certain core technical documents that it, plaintiff asserts are in its control with regard to certain foreign Konami-related entities with which I think I understand to be, at a minimum, Konami Japan and Konami Holdings.

Let's go ahead and call our current defendant "Konami U.S." just for identification purposes during the call to distinguish them from our foreign entities. And let me turn to plaintiff's counsel. And, Mr. Zachary, will you be handling this for plaintiff's side or will Mr. Hutchins?

MR. ZACHARY: Mr. Hutchins.

THE COURT: Mr. Hutchins, I'll turn to you. Let me ask a few questions up front, and to the extent we don't cover issues you think you need to raise, you can certainly

can do that as we talk.

And I guess my first question to you is just for specificity sake, am I right that what we're talking about here is a request for production of documents that are currently in the possession of two other entities, Konami Japan and Konami Holdings or is there some broader request?

MR. HUTCHINS: No. At the most, that is our understanding of the foreign entities that would have possession or control of the documents.

THE COURT: Okay.

MR. HUTCHINS: Nothing beyond that, Your Honor.

THE COURT: Then, secondly, as to situations like this one where our litigating party is either a subsidiary of a party of whom documents are said to be in the possession of or a sister corporation, which is I think our case here, *Gerling* sets out two possible paths for a plaintiff like you to demonstrate that there is sufficient control by Konami U.S. of those other two parties and their documents. One is that an allegation that the respective parties are alter-egos of each other and the second is that either the parent or the sister Corp. acted with the party in affecting the transaction at issue and is litigating on its behalf in this case.

Which one of those two scenarios are you alleging is in play here as to Konami Japan and Konami Holdings as they

relate to Konami U.S.?

MR. HUTCHINS: For the two lines of cases that *Gerling* mentions, we are going in the latter category. So we're not alleging that the corporate structures are deficient in such a way that they're the exact same company. We're not going forward on this alter-ego. It's more the fact that the U.S. entity is selling and marketing, et cetera, these games for the Konami Group or Konami Japan, coupled with the close corporate relationships. So it's the latter line of cases that *Gerling* discusses on, say, page 140, 141.

THE COURT: Fair enough. And I thought that was the case. So on that front, and assuming we're looking at those cases, I guess the next question would be, I think one of the two pieces of data that you note in both letters is the statement by Konami Group, which I assume for our purposes may be statements of Konami Holdings, but to the effect that as to certain subsidiaries, including Konami U.S. and Konami Japan, they "control" those entities.

What is the relevance of that statement in light of what I think the other side has pointed to, which is that the question here isn't whether Konami Holdings or Konami Japan controls Konami U.S. The question is whether Konami U.S. controls those entities or at least those entities' documents for our purposes. Why is Exhibit B of your most

recent letter even relevant?

MR. HUTCHINS: Good question, Your Honor. It's relevant because it shows the tightness of the affiliation. In other words, there is no bones about the fact that Konami Group or Konami Holdings is 100 percent owner and controller of Japan and U.S., and that Japan and U.S. have consolidated financials.

And it should not be fairly in dispute from that, that Konami U.S. is acting for the benefit of Konami Group as its figures out what it wants to market in these games, what games it wants to market, how it distributes and sells those, and the money goes back to Japan, all of which I believe is relevant under the second part of *Gerling* when you are talking about whether the company has access to these documents in its ordinary course and is acting for the benefit of the other party.

And I submit, respectfully I submit that U.S. is most definitely acting for the benefit of the Konami Group or Konami Japan in selling their games. I submit that this shows the businesses are intertwined. They have consolidated financials, after all, and Konami Group makes no bones about its control over it.

I sense a bit of an allergic reaction to our use of the term "Konami Group" from Konami; but it's not because it is a misrepresentation of how these companies are acting

together, it's because it gives a correct representation of how they're acting together and collaborating together with respect to these games, and the documents we are seeking are about how the games themselves function.

So we think when you are looking at sort of what category of cases to put this factual scenario in, it matches up best with those cases where you have a subsidiary or a sister, this corporate affiliate that would have a practical ability to get those documents.

And we do respectfully disagree with Konami when they say that the practical ability to get these documents is irrelevant. We believe that the second line of cases that *Gerling* addresses and the various other cases we cite that follow *Gerling* and proceed along that line explicitly address that it is a pertinent factor.

Because of the tight corporate affiliation, because of the facts that Konami Japan or Konami Group is making these games in conjunction with the U.S. entity, and the U.S. entity is marketing and selling them, this is a situation comparable to those types of cases where it's not a situation they can't get the documents, it's a situation they don't wish to get the documents. And the statement in *Gerling* to the effect that where you have the sub who, in the ordinary course or when it suits their own litigation needs, can get these documents, we don't want to go too

crazy in holding form over substance.

So I think that is why the exhibit is pertinent, because it goes to the tightness of the affiliation which we believe is pertinent. I mean some of the cases that Konami is citing are instances where they aren't even related companies, like *Inline Connection* or *Novartis*. They're competitive companies even.

So I don't know if I have spoken too long or if I answered your question.

THE COURT: No, I mean I understand your point there. I think my follow-up question would be, I mean again you have used the term "ability" to or "practical ability" to obtain the documents.

You'd acknowledge, wouldn't you, that the Third Circuit and certainly our court in interpreting it has emphasized that the right language is not so much "practical ability" but "control."

MR. HUTCHINS: Yes, Your Honor.

THE COURT: On that front then, if we're looking at again this kind of second path, is the subsidiary an agent of the parent in the transaction at issue, and is it litigating the suit on the parent's behalf?

When you look at *Gerling*, probably the case that it, as to that second path, that it cites most substantially as a good example of what it's looking for is the *Afros* case.

There, you didn't just have instances in which the foreign entities provided some documents at the request of the liti-gating entity of the U.S., but you had really deep additional factors both that demonstrated the foreign entities employees were kind of pulling the strings on the litigation and really substantial overlap between executives from the foreign entity and the U.S. litigating entity in various ways.

In light of the affidavit that the defendants provided from Mr. Minerd, would you acknowledge here that we don't have evidence of overlapping executives between the entities, and we don't necessarily have any further evidence that, for example, Konami Japan or Konami Holdings are pulling the strings in this litigation or in some way directing the litigation instead of Konami U.S.?

MR. HUTCHINS: I would have to concede, Your Honor, I do not know of the extent to which the folks in Japan are directing the litigation, for instance. Nor do I know how I would know that, but I'll freely admit I do not. And nor do I know the degree to which, on a day-to-day basis, for instance, the executives or folks from the Japan entities are going to the U.S. entity and vice-versa and who is reporting to whom, along those lines. And so I would thus say that I wouldn't say our case is factually identical to *Afros*, but no cases are factually identical to each other.

I guess we're looking at what bucket to tend to

put these into. In *Cormack*, I'll note that when they talk about litigating on behalf of the other, they really talk about who benefits, and is the foreign entity going to get benefit of the litigation. And there, I don't think it can be fairly disputed because of course it is, because any monies that come out of this litigation from Konami U.S.'s pocket come out of Konami Group's consolidated financials, and any disruption to the distribution of Konami Japan's games likewise, or costs or whatever actually since there is not really an injunction we're talking about here.

But the point being if you follow the money, or who benefits, which the *Cormack* case, in talking about the effect of *Gerling*, talks about, I think we do draw a closer paradigm.

THE COURT: I guess on that front, if it was sufficient to demonstrate for these purposes of control that the foreign parent or sister entity was litigating the suit on the parent's behalf simply because those entities shared consolidated financials with the U.S. litigating entity and/or in some way benefitted, might benefit financially, wouldn't that open the door to lots and lots of situations where that kind of control would be found?

MR. HUTCHINS: Certainly, were that the only factor. In other words, I think some of what we're fighting against in this, in the manner in which Konami is setting it

up, is they say, well, just this factor is not sufficient and just that factor is not sufficient, and that well may be true.

We are not suggesting that they have to produce the documents just because they have consolidated financials. I mean, again, Konami U.S. works with Konami Japan on these games because they are the ones responsible for making sure that the games can be marketed and sold in the U.S. and have what the U.S. market wants. The documents we are seeking are about the features and functionality, the core technical documents about those very games. And this is the type of document that would not be denied in the ordinary course of business because the relationship of the companies is such and the way they're structured is such that that information is shared and was shared because when they asked for the source code, they got it.

THE COURT: And --

MR. HUTCHINS: So it's all of these factors. It is the tight corporate relationship. It's the fact that the Japanese folks, Japan or Holdings or Group or whatever you want to call them, are benefitting from the tort that we're talking about. It's all of this together, that when you are looking at these various factors and the totality of the circumstances and you are saying, okay, is it fair for me to hold the form of the separate corporate entities versus the

substance of, do they really have access to these documents? And is it on a wink and a nod that they're washing their hands of it and saying they don't?

THE COURT: And I guess two last questions on my end. One is if *Afros* isn't the right case to look at in terms of those cited in *Gerling* as a comparator, what is? Is there some other case cited in *Gerling* or, if not, a case otherwise that you cited where you would say we think this is the best example of the most similar situation in which a court has found that the subsidiary was an agent of the parent in the transaction at issue and was litigating the suit on the parent's behalf?

MR. HUTCHINS: Well, *Cormack*. Again, we cite *Cormack*, and we cite *Camden*.

And I'm not saying that *Afros* isn't a good comparator. I think *Afros* is a fair comparator. I think on the most important factors of *Afros*, we compare favorably to that versus, for instance (coughing) -- excuse me, Your Honor, some of the cases that Konami relies most heavily on, which are, for instance, Rule 45 cases which are distinguished explicitly on those grounds or cases where there is not even a corporate affiliation, like *Inline Connections* or *Novartis*.

So I'm not saying discount *Afros*. I think we compare favorably to *Afros*, even though I will admit that

on the discovery record as it sits right now, I can't say that if I went to the top floor and looked at the executives of Konami U.S. I would know how many of them had stints in Japan or how they relate to Japan or if the board of directors is also affiliated with the Japanese companies. I just don't that have that information.

THE COURT: Indeed, here, we have a declaration from the other side saying that as to the U.S. and Japan entities, they have different presidents, separate boards and separate employees. That is our only record for now, right?, on the issue.

MR. HUTCHINS: Yes. I mean I don't know what is meant by separate board. I mean they have constituted separate boards, no doubt. I don't know what they mean here. In some degrees, the declaration is a declaration only a lawyer could love. Konami U.S. doesn't primarily involve itself with video game development, but, of course, they do involve themselves with some video game development. They don't have access to the computer servers owned by Japan, which says nothing about whether, if they asked for documents on those servers, they could get them or not, things like that.

THE COURT: Right.

MR. HUTCHINS: But I have to admit, Your Honor, I don't have discovery on that issue of whether there is

the sharing, you know, how the executives move back and forth. Although as a practical pragmatic matter, as far as these types of factors go, I think that is not particularly important, because again I think what is important is the practical effect of the close corporate affiliation, not that one company is an alter-ego of the other.

THE COURT: Okay. I understand you to be saying, look, they say they have separate boards but that literally could mean there are two separate boards. Oh, by the way, they share a great number of the same people on them. That is one of the issues you are raising about lawyerly language; is that right?

MR. HUTCHINS: Correct. Or that the members of the board for the U.S. company are employees or directors of the Japanese entities even though they may be different than the board members -- in other words, the U.S. boards may be separate from the Japanese boards. I don't know. They may or may not be, because they could be considered separate in any event, which is what you just correctly summarized from what I said.

Further, though, the U.S., the board of the U.S. entity could have people affiliated closely with the Japanese entities because they're employed by them or directors of them or what you have, even if those people are not also on the boards of the foreign entities. I just

don't know.

THE COURT: Understood. All right. The last question, and this may be clear to the parties but just maybe unclear to me: How come you didn't sue Konami Japan said to be the developer of these games? No jurisdiction or is there some other reason?

MR. ZACHARY: Your Honor, this is Michael Zachary.

THE COURT: They could be shared, I should say.

MR. ZACHARY: Yes. We, took over as plaintiff's counsel several months ago, I think around the beginning of this year.

THE COURT: Oh, right. Right.

MR. ZACHARY: The case was handled by prior counsel. Frankly, I don't know what the reasons were that prior counsel may have had for not naming the Konami Japanese entities. I'm sorry.

THE COURT: No, I got it. I had forgotten that. I'm sorry. Thank you.

In the interest of time, let me turn to defendant's counsel. Who is going to speak for defendant Konami's side?

MR. FOX: Your Honor, this is Ben Fox. And I will address this set of issues.

THE COURT: All right. Mr. Fox, go ahead. Let me start off by asking you a couple questions I had, and I

will let you circle back in your comments to other issues that you think need to be taken up.

The first is maybe just discretely, you know, we're talking about that affidavit that was provided in which I think the point of it was to demonstrate that Konami U.S. and Konami Japan did not have overlapping boards or presidents, et cetera, and there has been some question about whether the reference to separate boards of directors is a statement that there are simply two separate boards or also a statement that those two separate boards are entirely composed of different people. Can you represent which one is correct?

MR. FOX: Your Honor, I believe I can. But let just get any terminology straight so that we have a clear record because we're talking about three different companies.

THE COURT: Sure.

MR. FOX: So when we are talking about Konami Japan, I will be referring to Konami Digital Entertainment Co., Ltd., and that is a video game developer in Japan.

The separate ultimate parent company, Konami Holdings Corporation, we'll refer to as a holding company. That company also has a board. That company did not have any documents, did not make any products. It is a holding company only.

So the declaration was prepared at a time when

we were focused primarily on Konami U.S. and Konami Japan. Konami U.S., on the one hand, and Konami Japan on the other hand.

The reference to the boards, I believe the facts are that there may be some minimal overlap of board members as between Konami U.S. and Konami Japan but they are not the same members and membership is rotating such that it may be the case that a current Konami U.S. board member has been at one time a board member of another Konami entity, but they are operated separately. They have meetings at different times. They keep separate minutes. They are not the same membership. That is my understanding.

THE COURT: Okay. And the extent of the record we have on that question really is just the statement in paragraph 6 of the affidavit that was submitted by your side, by Mr. Minerd.

MR. FOX: Correct. The statements in the record is that we have one declaration from a client on the one hand and, on the other hand, we have argument of counsel and speculation and we have a financial statement.

The reason the financial statement refers to the Konami Group, it says for purposes of this financial statement, we are referring to the holdings company and its subsidiaries unless the context says otherwise.

Now, this is a statement that in the front of

the financial statement that the plaintiff did not provide in its excerpt. But the financial statement, taken as a whole, makes clear that the reason Konami Holdings Corporation, the ultimate parent company, provides consolidated financial statements is it is publicly traded, so investors have an interest in seeing what is going on with both the holding company and its wholly owned subsidiaries. That is not to say the company creates each of its separate companies, some of which are very different businesses, such as Konami Sports & Life which just up runs sports clubs, that they are treated as interchangeable. They are not.

THE COURT: With regard to some of the issues that I discussed with plaintiff's counsel as to *Gerling*. First, I mean it's certainly true as to this kind of second basis for showing sufficient control, *Gerling* certainly notes the importance of circumstances in which the U.S. litigating entity or the litigating entity that is at issue in the U.S. litigation has been able to obtain documents, one way or the other, from the foreign entity at issue. And we know at least with respect to source code there has been some I guess voluntary, you would say voluntarily sharing of source code and/or documents from Konami Japan to Konami U.S.

Why, in light of the case law, is that I think undisputed fact not sufficient to demonstrate that we've got

the kind of control that the Third Circuit is thinking about with this second pathway?

MR. FOX: Your Honor, it is not sufficient because *Gerling* defines "control" simply as the legal right to obtain the documents required on demand. The legal right. And that is *Gerling* quoting Wright & Miller. That is *Power Integrations*' view where Judge Farnan discussed and specifically rejected the broader technical ability set, which is what plaintiff is advocating for. That is a standard that is restated in *Inline Connection*. That is the standard that is stated by Judge Robinson in the *Cradle IP v Texas Instruments*.

Now, applying the test, this Court has applied it as to subpoenas as in *Power Integrations* and also as to document requests served under Rule 34. That is *Glenz V Sharp Electronics*, that is *Inline Connections*, and that is the *Novartis* case.

Referring specifically to the text within *Gerling* where the Court is talking about whether the entity is the agent of the parent in the transaction and litigating the suit on the parent's behalf, that is not this case and there is no record to suggest that is the case here.

The plaintiff was aware of Konami Japan as the developer of the Dance Dance Revolution games as early as 2013 and likely earlier because it is publicly available information.

But Konami U.S. identified Konami Japan as the developer and as a nonparty witness in its initial disclosures served in 2013. So plaintiff had ample opportunity either to name Konami Japan as a defendant, if they thought there was a basis for doing so, or to serve discovery using the procedures outlined in the Hague to obtain documents from Konami Japan, and they chose not to do so.

And there isn't a record on this, but my feeling of why they did not do so is the same reason that they have declined so far to review source code, although we have made it available since 2014. It is too expensive or they do not want to invest the time needed to do that. But that does not mean that we change the rules in the Third Circuit and the Delaware court and allow plaintiff to get documents from overseas entities just because the plaintiff thinks that would be more convenient for them.

THE COURT: And just parsing through some of the language in *Gerling*, one question would be -- let me get your view on a couple things.

One is I know we need to use the legal right construct. When we are looking at the second pathway, a situation where the subsidiary is the agent of the parent, or here I mean let's just talk about Konami U.S. and Konami Japan because I think at least what you have asserted is, look, I'm not saying Konami Japan has core technical

documents, but of the two entities we're talking about here, Konami Holdings sure doesn't. So let's focus on Konami Japan for a second.

So let's say we're talking about a situation where it is alleged that the subsidiary or here the sister corporation is the agent of the other sister corporation and the transaction giving rise to the suit and in litigating the suit on the parent's behalf.

If I'm trying to understand and kind of marry these things, how would you explain why that circumstance is a circumstance where Konami U.S. would have the legal right to Konami Japan if that circumstance was met? And I know that may be confusing. I guess what I'm trying to ask is, this circumstance where the sister corporation is the agent of the other corporation, the transaction at issue, and it is litigating the suit on the other corporation's behalf, how does it make sense to say in that scenario the first corporation has the legal right to get documents from the other? Can you put those together in your mind?

MR. FOX: Your Honor, I will try, and this will require me to read more into *Gerling* than I am able.

I assume that passage was written with the thought that this could be a claim by either a plaintiff or a defendant and involving cases outside of the IP context. So when we talk about the second portion of the passage,

litigating the suit on the parent's behalf, Konami U.S. is a defendant, Konami U.S. did not choose to bring the suit, did not choose to identify who would be sued. Konami U.S. did not assert counterclaims either on its own behalf or on behalf of its indirect affiliate, Konami Japan.

Konami U.S. is a marketing and sales company and it sells only a subset of games that are made by Konami Japan and also sells games made by nonparty game developers, such as Blitz Games which made some of the Karaoke Revolution titles that are at issue here. So Konami U.S. is not acting as an agent for Konami Japan. It is a marketing and a sales company with its own revenue stream and its own operations.

Two of the cases -- three of the cases that we cite specifically address the situation, *Cradle IP*, *Power Integrations*, and *Glenz v Sharp* stated just being a sales and marketing company for a product that is made by another party does not make one in legal possession, custody or control of the product developer's technical documents.

And that makes sense because Konami U.S., as we have mentioned, does not have engineers, does not have employees who in the ordinary course would need to, or be able to, for the most part, review in any meaningful way technical documents from Konami Japan.

Documents also, if they exist, we assume are in

Japanese. So reviewing them and translating them, even if they could be obtained, is not a small task.

THE COURT: And I guess you kind of answered the other question I was going to have, which is are you contending that what hasn't been met here is a showing that Konami Japan is litigating the suit or that Konami U.S. is litigating the suit on Konami Japan's behalf or that both that and that Konami U.S. hasn't been an agent of Konami Japan in the transaction giving rise to the suit, whatever that means? It sounds like you are saying both.

MR. FOX: Your Honor, I don't think the plaintiff has showed either. One, the plaintiff hasn't submitted any evidence. And, two, the plaintiff hasn't even identified a specific transaction that gives rise.

What plaintiff is saying is that Konami has infringed the patent either by selling or using the game, not by developing it. So I don't think plaintiff meets either prong.

THE COURT: All right. Is there anything further that you want to add before I turn back to the plaintiff to ask for any final thought they have?

MR. FOX: No, Your Honor. Thank you.

THE COURT: And on the plaintiff's side, I'll just give you briefly the chance. If there is anything that you briefly want to respond to, Mr. Hutchins, that you have

heard, I'll give you the opportunity to do that before we finish up.

MR. HUTCHINS: Certainly. Briefly, Your Honor, on the very last point.

The transaction we're talking about, the tort, is the selling of the infringing games. It really shouldn't be in dispute that that is being done for the benefit of the Japanese company given that they're the Japanese company's game and that is where the money is going back to and is counted.

With respect to the cases that were mentioned, I already discussed how *Power Integrations* and *Cradle* were Rule 45 cases and were distinguished on those grounds.

Oh, just -- counsel, my brother counsel said just being a seller isn't sufficient.

We don't dispute that. In fact, we think it is important that in *Inline Connection* and *Novartis,* that is all they were, because they weren't related companies. Here, we have much more than that.

Counsel mentioned the *Glenz* case. And I think that is a fine case. The Judge came out the other way, but the analysis the Judge put forth is exactly the analysis and reading of *Gerling* that we're submitting is the correct one. So I don't at all mind them citing the *Glenz* case.

The last point I guess I would make is at the

very beginning, counsel mentioned that there is a whole slew of corporations in the Konami Group that are wholly owned and controlled by the holding company, including ones that sell sporting goods.

I think that proves my point. Because we're not seeking documents from the company that is selling sporting goods from a U.S. entity that is selling video games. Here, we have a complete match-up between the category and types of documents that we're seeking, the matter in dispute, and what both companies do which is involved with these games. So, if anything, I think that counsel's point proves mine as to the appropriateness in this instance with these two or three, however you count, corporate affiliates, the appropriateness of finding control.

THE COURT: And --

MR. HUTCHINS: Again, if you have any other questions, I'll answer them, but I very much appreciate your consideration. Thank you, Your Honor.

THE COURT: Sure. Just one last one, which is kind of the same question I asked Mr. Fox, which is if I'm just trying to marry the language in the case and we're looking at a scenario where here it is alleged that Konami U.S. was the agent of Konami Japan and the transaction giving rise to the suit and in litigating the suit on Konami's Japan's behalf, how does it make sense to say that

that is a circumstance in which Konami U.S. has a legal right to the documents of Konami Japan?

MR. HUTCHINS: That is an excellent question and one I grappled with in my mind. I don't think I can square it. I think that is why, in both the cases we cite and the cases that Konami cites, almost immediately after they say that standard, they say "and this has been construed very broadly in the Third Circuit."

THE COURT: All right.

MR. HUTCHINS: I don't think it is the case in any of these cases along these lines that you have the legal right to demand that this other company do these things, by either law or by corporate governance, et cetera. To the contrary, these are the lines of cases that are putting the substance over the form and looking at what is really going on versus the other.

And so I think it is, I don't know that it can be squared with the literal language, but I suggest it doesn't have to be. Because this line of cases has developed in the way that it has. If that makes sense to you, what I'm saying.

THE COURT: It does. In any event, it sounds like you would acknowledge whatever the second path requires, it requires that in that some way, say as to Konami Japan, Konami U.S. would have to have control over

Konami Japan's documents at issue in some way.

MR. HUTCHINS: Without question, that is the fundamental issue we are grappling with is the meaning of control under Rule 34.

THE COURT: All right. Thank you, counsel. I appreciate the argument.

On these issues, what I will do is first as to the disputes first raised by Konami, we've resolved how we're handling them. I'll issue just a short order today that memorializes what I have said on this call and, secondly, as to this dispute about regard to the sister corporation, parent corporation issue, I'll issue a short order in the next couple of days that resolves it. It's an issue that obviously the parties have spent some time on, and I want to make sure that I give some reflection to what was said on the call today, but in any event I intend to resolve it very shortly so the parties can be on their way.

With all that said and knowing that I won't be well positioned to resolve kind of budding disputes that may be occurring between the parties that they haven't addressed themselves to each other and which I haven't seen briefing on, at the same time, if there is anything I can say on the call procedurally that would be helpful going forward, I'm happy to try.

Is there anything else I need to take up on

this call in those regards from plaintiff's perspective, Mr. Zachary or Mr. Hutchins?

MR. ZACHARY: Your Honor, Michael Zachary.

We have some questions about Harmonix's compliance with Your Honor's prior order but we're still in discussions regarding that issue. So I don't think it is ripe yet to present to the Court. So we don't have any other issues to present today. I think we can just talk through them with counsel and hopefully we'll get a resolution. We'll come back to Your Honor if we can't.

THE COURT: Okay. I'm certainly crossing my fingers on that front but I appreciate that.

And for counsel for Harmonix and EA, Ms. Thayer?

MS. THAYER: Yes. Our position is we fully complied with the Order, and they continue to want us to provide more and to circumvent the discovery and the interrogatory process by asking us to give them more information and do their homework for them.

But the one issue that we will come back to you on later, if we cannot resolve it amongst the parties, is the fact that they provided a combined supplemental infringement contention for both Harmonix and EA products, and we think at a minimum we need three charts instead of two: one for Harmonix's console products one for EA's products that we can show and give to EA, that is one

client, and one for Harmonix mobile products that would be directed to Harmonix. They have combined them all and they failed to address that some products are the responsibility of one of our clients and some products are the responsibility of only the other clients.

THE COURT: All right.

MR. ZACHARY: Your Honor, this is Michael Zachary.

I heard Ms. Thayer say that earlier on the call, and that is the first time I heard it. I'd like to look at what she said and then we'll get back to her. I don't have any response at this time.

THE COURT: Fair enough.

And with regard to Konami's counsel, same question, Mr. Fox, or otherwise.

MR. FOX: Your Honor, I don't think we have anything further. Thank you.

THE COURT: Okay. Let's see. I'm going to see the parties next week with regard to claim construction. I've got a couple of pending motions that I'm intending to resolve by the end of the month of September. I know the case is moving forward and I intend to help it do that.

So we have talked about how we're going to resolve these discovery disputes, and we certainly got some additional steps coming up. So I look forward to seeing the party in Delaware, and otherwise I appreciate counsel's time

on our call today. Thanks, everyone.

(The attorneys respond, "Thank you, Your Honor.")

THE COURT: Good-bye.

(Telephone conference ends at 12:00 p.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Brian P. Gaffigan
Official Court Reporter
U.S. District Court