# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

(302) 658-9200
(302) 658-3989 FAX

**Rodger D. Smith II**
(302) 351-9205
rsmith@mnat.com

February 16, 2018

The Honorable Christopher J. Burke           *VIA HAND DELIVERY &*
United States District Court                 *ELECTRONIC FILING*
844 North King Street
Wilmington, DE  19801

      Re:    *Princeton Digital Image Corp. v. Konami et al.*, C.A. No. 12-1461 (LPS-CJB)

Dear Judge Burke:

Defendant Konami Digital Entertainment, Inc. ("Konami" or "Konami US") submits this response to PDIC's February 14, 2018, letter on discovery disputes raised by PDIC.

## I. Introduction

PDIC's letter seeks to manufacture disputes in retaliation for Konami's letter regarding PDIC's discovery deficiencies. Prior to PDIC's letter, Konami was unaware of any outstanding dispute regarding its discovery efforts. (Malloy Decl. ¶ 2.) PDIC never suggested it intended to move to compel or declared an impasse during the parties' February 2 meet-and-confer call. (*Id.*) Several issues in its letter were not discussed at all. (*Id.* ¶¶ 2, 7-11.) None has merit.

## II. Technical Documents for the Accused *Karaoke Revolution*, *Dance Dance Revolution* and *Dance Dance Revolution Mobile* Games

This issue was resolved before the parties' February 2 call. As Konami informed PDIC during the call, Konami has produced all technical documents for the accused games located after a thorough search. (Malloy Decl. ¶ 3; Minerd Decl. ¶ 8.) PDIC offers no evidence that Konami has more documents. Thus, PDIC's motion should be denied. *See, e.g., Novanta Corp. v. Iradion Laser, Inc.*, C.A. No. 15-1033, 2016 WL 4987110, at *3 (D. Del. Sept. 16, 2016) (party cannot be compelled to produce documents it does not have).

PDIC's position that Konami is withholding documents is incorrect. Konami is a videogame publisher and distributor, not a videogame developer. (Minerd Decl. ¶¶ 3-8.) Konami did not develop the accused games (*Karaoke Revolution* and *Dance Dance Revolution*) and has limited technical documents regarding them, which Konami already has produced. (*Id.*)

PDIC's assertion that "Konami worked with Harmonix and Blitz Games on the development of the *Karaoke Revolution* games" (Ltr. at 2) is wrong. Konami did not conduct development of the *Karaoke Revolution* games in-house. (Minerd Decl. ¶ 4.) Regardless, Konami has already produced all technical documents regarding the *Karaoke Revolution* games that it could locate. (*Id.* ¶ 8.) PDIC offers no evidence otherwise.

PDIC's effort to compel Konami US to produce more technical documents regarding the *Dance Dance Revolution* games developed by its Japanese affiliate ("Konami Japan") is also

baseless. (Ltr. at 2.) Konami does not have any more such documents to produce. (Minerd Decl. ¶¶ 6, 8.) PDIC ignores that in August 2016, the Court fully considered and denied Plaintiff's motion to compel Konami to produce documents possessed by Konami Japan. (D.I. 176.) The Court correctly held that no evidence existed that Konami US has control over Konami Japan's documents. (*Id.* ¶ 5.) Since then, PDIC made no effort to obtain documents directly from Konami Japan. (Malloy Decl. ¶ 4.) Nor has PDIC submitted any new evidence suggesting Konami has control over Konami Japan documents. PDIC's only argument is that a "Konami employee in Japan" signed a Power of Attorney for the IPR proceeding. (Ltr. at 4.) That argument is off-base: The former employee who signed that document was Konami US's lead in-house counsel for the U.S. entity. (Minerd Decl. ¶ 13.) That she signed the Power of Attorney while on leave in Japan says nothing about Konami US's control over Konami Japan documents. (Fox Decl. ¶¶ 2-4.) PDIC's continued efforts to compel Konami US to obtain and produce Konami Japan documents are irreconcilable with the Court's August 2016 Order.

### III. Summary Sales, Costs, and Profits for the Accused Games

This issue was resolved during the parties' February 2 call. Prior to that call, Konami already had produced sufficient financial information showing the sales, revenue, costs, and profits for the accused games. (Malloy Decl. ¶ 5.) During the call, PDIC requested additional information, and Konami agreed to provide it. (*Id.*) Konami worked diligently to collect the additional information and anticipates producing it on February 20, after a final review. (*Id.*. Minerd Decl. ¶ 7.) PDIC has no legitimate basis for complaining here.

### IV. Development, Distribution, License, and Settlement Agreements Concerning the Accused Games

PDIC seeks two categories of documents—agreements and communications. With respect to the *first* category of documents (agreements), this issue was resolved by the parties' February 2 call. As Konami informed PDIC, Konami has produced all development agreements for the accused games located after a thorough search. (Malloy Decl. ¶ 6; Minerd Decl. ¶ 9.) Plaintiff offers no evidence otherwise. Konami agreed to produce master distribution agreements with Nintendo and Sony, and Konami anticipates completing its production of those agreements by February 20. (Malloy Decl. ¶ 6.) Konami also agreed to search for any additional license and settlement agreements related to Konami's accused games and will promptly produce any such agreements it locates. (*Id.*) There is nothing to compel.

With respect to the *second* category of documents (communications), PDIC has never met and conferred with Konami on this issue. (Malloy Decl. ¶ 8.) For that reason alone, its motion should be denied. *See, e.g., Masimo Corp. v. Philips Elecs. N. Am. Corp.*, C.A. No. 09-80-JJF, 2010 WL 1135739, at *2 (D. Del. Mar. 23, 2010) (denying motion to compel for failure to meet and confer adequately). Regardless, there is no merit to PDIC's position that Konami should be compelled to produce all *communications* about the agreements. The party seeking to compel documents has the burden of showing relevance. *E.g., Novanta*, 2016 WL 4987110, at *4; *Invensas* 2013 WL 12146531, at *2-3 (similar). PDIC speculates that these communications *might* include documents "describ[ing] . . . the hardware and software of the console and devices used to execute the games (Ltr. at 3), but Konami has already produced all such documents that it located after a thorough search. (Malloy Decl. ¶ 3; Minerd Decl. ¶¶ 6, 8.) PDIC offers no further explanation for why it needs Konami to produce all communications about its contracts (including for prior unrelated settlements). Even if PDIC could articulate

*some* relevance, discovery must be "proportional to the needs of the case" and must account for "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). The burden on Konami to collect and produce all communications would far outweigh any probative value. Thus, PDIC's motion should be denied.

### V. Purportedly "Non-Privileged" Communications with Other Defendants

PDIC has never met and conferred with Konami on this issue. (Malloy Decl. ¶ 9.) For that reason alone, its motion should be denied. *E.g.*, *Masimo*, 2010 WL 1135739, at *2.

PDIC's position that confidential litigation-related communications among Defendants about their defenses are discoverable is incorrect in any event. The communications are protected by (at least) the common interest privilege.[1] "The common interest privilege protects communications between individuals and entities and counsel for another person or company when the communications are 'part of an on-going and joint effort to set up a common defense strategy.'" *Robert Bosch LLC v. Pylon Mfg. Corp.*, 263 F.R.D. 142, 146 (D. Del. 2009) (quoting *In the Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986)). Communications between co-defendants are privileged if "(1) their communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived[.]" *MobileMedia Ideas LLC v. Apple Inc.*, 890 F. Supp. 2d 508, 515 (D. Del. 2012). No written agreement is required. *Id.* at 518.

The common interest privilege applies in patent cases. "It can be anticipated that co-plaintiffs (or co-defendants) in a lawsuit involving the same patents will share information, and this, of course, is at the heart of the common interest doctrine; it allows communications between clients and attorneys allied in a common legal cause to remain protected because it is reasonable to expect that parties pursuing common legal interests intended resultant disclosures to be insulated from exposure beyond the confines of the group." *INVISTA N. Am. S.à.r.l. v. M&G USA Corp.*, C.A. No. 11-1007-SLR-CJB, 2013 WL 12171721, at *9 (D. Del. June 25, 2013) (internal quotation and citation omitted). Here, Defendants have common interests in proving PDIC's patent invalid, unenforceable, and not infringed. Their confidential communications to further those interests (all conducted between counsel) are privileged.

Plaintiff's citation to *Acceleration Bay LLC v. Activision Blizzard, Inc.*, C.A. No. 16-453-RGA, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018), is inapposite. There, the Court found that communications relating to the plaintiff's "negotiation" with a litigation funder over the funding of prospective litigation were not privileged. *Id.* at *1, 3. The Court observed that the primary purpose of the communications was to facilitate a loan, "as opposed to aiding in possible future litigation." *Id.* at *2. Those adversarial communications have nothing in common with Defendants' common-interest communications here.

### VI. Documents Relating to the Alleged Citation of PDI's '129 Patent by Konami Japan and Its Patent Attorneys

PDIC has never met and conferred with Konami on this issue. (Malloy Decl. ¶ 10.) For that reason alone, its motion should be denied. *E.g.*, *Masimo*, 2010 WL 1135739, at *2.

---

[1] The communications are also attorney work product. They also do not contain admissible evidence, and production would be unduly burdensome. Fed. R. Civ. P. 26(b)(1).

PDIC's motion also should be denied because Konami does not possess the documents that PDIC seeks to compel. (Minerd Decl. ¶ 6, 11.) Konami generally does not participate in patent prosecution activities. (*Id.* ¶ 11.) More particularly, Konami did not participate in the prosecution of the patents that PDIC identifies in its letter and cited in its complaint (D.I. 94 ¶¶ 69-71) – the patents are owned by the parent corporation in Japan. (Minerd Decl. ¶ 11.) And the prosecution activities were performed by Konami's affiliates in Japan. (*Id.*) Konami has repeatedly informed Plaintiff of this fact (which Plaintiff should have recognized from the face of the patents). (Malloy Decl. ¶ 13.) Again, the Court has already determined that Konami US is not required to obtain and produce documents from Konami Japan. (D.I. 176.)

Even if Konami US had possession, custody, or control over the prosecution documents (which it does not), PDIC's motion should be denied for the additional reason that the documents are irrelevant. The fact that *Konami Japan* cited PDIC's patent during patent prosecution provides no evidence as to whether *Konami US* knew about the patent given that Konami US does not participate in Konami Japan's prosecution activities. (Minerd Decl. ¶¶ 11-12.)

Plaintiff's assertion that "employees of the Konami group in Japan also handle patent matters for Konami Digital Entertainment, Inc. in the United States" is unsupported. (Ltr. at 4.) As noted above, Plaintiff miscites a Power of Attorney that Plaintiff claims was "signed by a Konami employee in Japan." (*Id.*) Actually, the employee signed the document as Vice President of Konami US while spending time with family in Japan on a leave of absence, before leaving Konami one month later. (Fox Decl. ¶¶ 2-4; Minerd Decl. ¶ 13.) Again, no basis exists for Plaintiff's suggestion the U.S. and Japanese companies are interchangeable.

### VII.   Marketing, Advertising, and Customer Support Documents

PDIC has not met and conferred with Konami on this issue. (Malloy Decl. ¶ 7.) For that reason alone, its motion should be denied. *Masimo*, 2010 WL 1135739, at *2. Regardless, Konami has produced all marketing, advertising, and customer support documents for the accused games located during a thorough search. (Malloy Decl. ¶ 7; Minerd Decl. ¶ 10.) PDIC offers no contrary evidence. Its motion should be denied. *Novanta*, 2016 WL 4987110, at *3.

### VIII.   Konami's Responses to PDI's First Set of Interrogatories

PDIC has never met and conferred with Konami on this issue except with respect to PDIC's Interrogatory No. 2. (Malloy Decl. ¶ 11.) For that reason alone, its motion should be denied except with respect to Interrogatory No. 2. *Masimo*, 2010 WL 1135739, at *2.

With respect to Interrogatory No. 2 (on non-infringement), Konami already agreed to supplement its response by roughly February 16, 2018, and Plaintiff expressed no objection. (Malloy Decl. ¶ 12.) Konami's attention has been diverted to responding to Plaintiff's discovery letter. (*Id.*) Konami now anticipates supplementing on February 20, 2018. (*Id.*)

With respect to Interrogatory No. 3 (on invalidity), Defendants are working diligently to prepare supplemental invalidity contentions and will serve them as soon as they are complete. (Malloy Decl. ¶ 11.) PDIC offers no explanation for why it needs the contentions "within ten days" (Ltr. at 4), and never conferred with Konami about such timing.

For the remaining interrogatories, PDIC fails to identify what supplementation (if any) it seeks. Thus, PDIC's motion should be denied.

Respectfully,

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

Enclosures
cc:   Clerk of Court (via hand delivery)
      All Counsel of Record (via electronic mail)