

Sean T. O'Kelly, Esquire
sokelly@oelegal.com
Direct (302) 778-4001

February 14, 2018

**BY ELECTRONIC FILING & HAND DELIVERY - FILED UNDER SEAL**

Magistrate Judge Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Unit 28, Room 6100
Wilmington, DE  19801

> Re:  *Princeton Digital Image Corp. v. Konami Digital Entertainment Inc., et al.*, Case
> No. 1:12-cv-01461-LPS-CJB

Dear Judge Burke:

Pursuant to the Court's February 12, 2018 Oral Order, we write to identify the discovery disputes plaintiff ("PDI") will raise during the February 21, 2018 teleconference.

**I.      Introduction**

Plaintiff PDI alleges that defendant Konami Digital Entertainment Inc. ("Konami") directly, indirectly, and willfully infringes claims 14, 19, and 20 of U.S. Patent No. 5,513,129 (the "'129 patent").  D.I. 94 (PDI's Third Amended Complaint).  The accused products are eight *Karaoke Revolution* video games, ten *Dance Dance Revolution* video games, and two *Dance Dance Revolution Mobile* video games published, distributed, marketed, promoted, tested, and otherwise used by Konami with Sony PlayStation and Nintendo Wii gaming consoles or Apple iOS mobile devices.  *See, e.g.,* Ex. 1, Claim Charts at 3–4, 5, 23, 32, 41, 60, 69, 78, 99, 109.

**II.     Technical Documents For The Accused *Karaoke Revolution*, *Dance Dance Revolution* and *Dance Dance Revolution Mobile* Games**

Pursuant to the Court's Scheduling Orders, Konami was obligated to produce its "core technical documents" related to the accused games by March 29, 2016, and PDI also served a request for production seeking additional technical documents "relating to the design, development, manufacture, testing, and operation of [those games], including all source code, software design specifications, functional requirements, test plans and results, user manuals, user guides or instructions."  *See* D.I. 90 at 2; Ex. 2 (RFP No. 1).

On the Court's March 29, 2016 deadline for producing "core technical documents" Konami produced only twenty end user manuals for some (but not all) of the accused games,

comprising a total of less than 400 pages. *See, e.g.,* D.I. 143, Ex. 3. In July of 2016, four months after the Court's deadline, Konami produced approximately 25,000 additional pages of documents, including (for the first time) internal technical documents concerning some (but, again, not all) of the accused *Karaoke Revolution* game titles developed by third-party Blitz Games.[1] Konami continued to produce documents in January of 2018 comprising approximately 7,000 additional pages describing primarily the same subset of accused *Karaoke Revolution* game titles developed by Blitz Games. Based on PDI's review of these documents, however, Konami has not produced any internal documents at all describing the features of the *Karaoke Revolution* game titles developed by Harmonix, or the *Dance Dance Revolution* and *Dance Dance Revolution Mobile* game title developed by affiliated companies of the Konami group in Japan. *See, e.g.,* D.I. 151 ¶ 5; *see also* Ex. 3 at 2–5.

The Court should Order Konami to complete its technical document production within ten days. Konami worked with Harmonix and Blitz Games on the development of the *Karaoke Revolution* games, and, in addition, it published and distributed those games, as well as the *Dance Dance Revolution* and *Dance Dance Revolution Mobile* games; marketed, promoted, and advertised the features of those games; and provided customer support for those game features, in the United States. *See, e.g.*, D.I. 151 ¶¶ 2, 6.

Such an Order is necessary because Konami's production of technical documents should have been completed long ago, by the deadlines for the defendants to produce core technical documents (March 29, 2016), and the parties to substantially complete their document productions (September 1, 2016). *See* D.I. 90 at 2–3. In addition, PDI has noticed the Rule 30(b)(6) deposition of Konami (Ex. 4), and PDI needs to review Konami's complete technical document production in order to prepare for this deposition, and in order to prepare for the inspection of Konami's relevant source code described in the technical documents.

## III.   Summary Sales, Costs, And Profits For The Accused Games

PDI has served requests for production seeking summary sales, costs, and profit information related to the distribution by Konami of each of the accused games in the United States during the six-year damages period prior to the filing of PDI's Complaint. *See* Ex. 2 (RFP No. 2, 15, 16, 18). Although Konami has stated that it will provide this information, that information is overdue in view of the Court's September 1, 2016 deadline for the parties' document productions to be substantially complete, and Konami should be Ordered to produce it within ten days prior to the upcoming Rule 30(b)(6) deposition of Konami that has been noticed in this case. *See, e.g.,* Ex. 4 (Topic Nos. 9, 10).

## IV.   Development, Distribution, License, And Settlement Agreements Concerning The Accused Games

PDI has served requests for production seeking the discovery of Konami's development, publishing, distribution, licensing, and settlement agreements concerning the accused games, and communications related to these agreements. *See* Ex. 2 (RFP Nos. 1, 3, 14, 15). These requests encompass, for example, development, publishing, and distribution agreements entered into by

---

[1] The *Karaoke Revolution* games were developed by Blitz Games or Harmonix. D.I. 151 ¶ 3.

Konami with other affiliates of the Konami group or third-party game development studios relating to the development and distribution of *Karaoke Revolution*, *Dance Dance Revolution*, and *Dance Dance Revolution Mobile*, which are relevant to damages and to show Konami's business operations and infringing testing and use of the games in the United States pursuant to the terms of those agreements.  The requests also encompass documents exchanged between Konami (or its affiliates or development partners) and the manufacturers of the relevant gaming console systems and mobile devices (including Nintendo, Sony, and Apple), which describe (1) the hardware and software of the consoles and devices used to execute the games (such as APIs and technical specifications), and (2) the agreements between, and the acts performed by, the parties in order to obtain approval from the console and device manufacturers to sell the games in the United States, which are relevant to show the features of the accused hardware and software that are accused of infringement, and the acts performed by Konami related to the game software in the United States.  The requests include licensing and settlement agreements pertaining to the defendants' accused games,[2] which would be relevant at a minimum to PDI's reasonable-royalty damages.  The Court should Order Konami to produce these agreements and communications within ten days to permit PDI to review these documents prior to deposing Konami's Rule 30(b)(6) witnesses on technical issues and damages.

## V.       Non-Privileged Communications With Other Defendants

Konami has stated that it will not produce any communications (or related documents) between Konami and the other defendants (Harmonix, Electronic Arts, and Ubisoft) or to produce a witness to testify as to these issues, citing the attorney-client, work product, and common interest privileges.  *See* Ex. 5 (Objections to RFP Nos. 19, 20, 22); Ex. 6 (Objections to Rule 30(b)(6) Topic 14).  Konami has, however, failed to establish that there is a "common legal interest" that would extend to each and every communication and document exchanged between the defendants.  *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, Nos. 16-453-RGA, 16-454-RGA, 16-455-RGA, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018).  At a minimum, any communications or documents concerning the infringement by the Defendants' unrelated accused products, damages, or other issues where the Defendants' legal interests are not identical are not protected.  Konami should be ordered to produce any non-privileged documents within ten days, and provide a witness to testify on those communications.

## VI.      Documents Relating To The Citation Of PDI's '129 Patent By Konami, Its Affiliates, And Their Patent Attorneys

In its Complaint, PDI pleads specific facts in support of its allegations that Konami was aware of the '129 patent and of its infringement, including the fact that the '129 patent was repeatedly cited and discussed by U.S. patent attorneys for Konami or its affiliates during the prosecution of patent applications relating to its video game products.  *See* D.I. 94 ¶¶ 69–71; *see also* Ex. 10 (excerpts from the prosecution history of one cited patent application).  Although Konami did not move to dismiss PDI's claims for indirect and willful infringement based on these allegations, Konami has stated that it will not produce documents relating to the

---

[2] E.g., Konami sued Harmonix for patent infringement by the *Rock Band* video game.  Case No. 6:08-cv-00286 (E.D. Tex.).

prosecution of these patent applications, and will oppose the discovery sought by PDI in subpoenas directed to the prosecuting attorneys. Ex. 5 (Objections to RFP No. 11); Ex. 6 (Objections to Rule 30(b)(6) Topic No. 13); Ex. 7 at 1–2; *see also* Exs. 8–9 (PDI's subpoenas). The basis for Konami's opposition is that the patent applications referred to in PDI's Complaint were assigned on their face to a related affiliate of the Konami group, not specifically to Konami Digital Entertainment Inc. Ex. 7 at 1–2; Ex. 10 at 1–2.

The Court should Order Konami to produce documents and a witness to testify concerning the prosecution of the patent applications referred to in PDI's Complaint. The patent applications were each applied for and prosecuted in the United States, where Konami Digital Entertainment Inc. is the entity responsible for publishing and distributing video games like the ones described in the patent applications. D.I. 151 ¶ 6. And, although Konami suggests that there is a bright-line distinction between the operations of Konami Digital Entertainment Inc. (in the United States) and related Konami entities (e.g., in Japan) (*see* Ex. 7 at 1–2), in fact employees of the Konami group in Japan also handle patent matters for Konami Digital Entertainment Inc. in the United States. As an example, when Konami Digital Entertainment Inc. filed its petition for *inter partes* review of PDI's '129 patent, the Power of Attorney was signed by a Konami employee in Japan, and PDI needs discovery concerning the knowledge of these employees of the '129 patent. Ex. 11.

## VII.   Marketing, Advertising, And Customer Support Documents

To date, Konami has produced only limited documents relating to its marketing, advertising, and customer support for the accused games. *See, e.g.,* Ex. 2 (RFP No. 19). These documents are relevant to PDI's claims for inducement of infringement by end users of the games, and they are relevant to PDI's claims for direct infringement because any use by Konami in the United States of the game software constitutes infringement, including the demonstration of the games, as well as the testing and playing of the games for purposes of marketing the games and providing technical support for the games. *See, e.g.,* Ex. 1, Claim Charts at 3. The documents describing this use, and its connection to marketing, advertising, sales, and customer support, are relevant to PDI's claims and should be ordered produced within ten days.

## VIII.   Konami's Responses To PDI's First Set Of Interrogatories

Finally, the Court should Order Konami to supplement its June 2016 responses (Ex. 12) to PDI's first set interrogatories (Ex. 13), including PDI's Interrogatory Nos. 2 and 3 requesting, respectively, the factual and legal basis for Konami's contentions that the asserted claims of the '129 patent are not infringed and are invalid. In its initial response, Konami represented that it would supplement its response in the future as the asserted claims had not yet been construed by the Court. In view of the Court's claim construction Orders and the resumption of discovery, Konami should be Ordered to supplement its responses within ten days.

O'Kelly Ernst & Joyce, LLC

February 14, 2018

Respectfully submitted,


 /s/ Sean T. O'Kelly
Sean T. O'Kelly (No. 4349)
Daniel P. Murray (No. 5785)
O'KELLY ERNST & JOYCE, LLC
901 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:  (302) 778-4000
Facsimile:  (302) 295-2873
Email: sokelly@oelegal.com
Email: dmurray@oelegal.com


Michael J. Lennon (admitted *pro hac vice*)
Michael D. Loughnane (admitted *pro hac vice*)
Ryan J. Sheehan (admitted *pro hac vice*)
ANDREWS KURTH KENYON LLP
One Broadway
New York, NY  10004-1007
Telephone:  (212) 425-7200
Facsimile:  (212) 425-5288
Email: mlennon@kenyon.com
Email: mloughnane@kenyon.com
Email: rsheehan@kenyon.com


Attorneys for plaintiff
PRINCETON DIGITAL IMAGE CORPORATION


cc:     File Copy
        All counsel of record