# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200
(302) 658-3989 FAX

**Rodger D. Smith II**
(302) 351-9205
rsmith@mnat.com

March 12, 2018

The Honorable Christopher J. Burke                     *VIA HAND DELIVERY &*
United States District Court                                       *ELECTRONIC FILING*
844 North King Street
Wilmington, DE 19801

      Re:    *Princeton Digital Image Corp. v. Konami et al.*, C.A. No. 12-1461 (LPS-CJB)

Dear Judge Burke:

      Konami Digital Entertainment, Inc. ("Konami US") respectfully submits this response to PDI's supplemental letter dated March 8, 2018, regarding PDI's discovery disputes.

      **I.**    **Documents re: Any Citation of Plaintiff's Patent-in-Suit in Connection with Patents Owned by Konami Japan or the Japanese Holding Corporation**

      Plaintiff's letter renews the argument that Konami US should be ordered to obtain and produce any documents that referenced PDI's '129 patent in connection with the prosecution of patents owned by Konami US's indirect affiliate, Konami Digital Entertainment, Co. Ltd. ("Konami Japan") or Konami US's ultimate parent, the Holdings Corporation. Konami US does not have possession, custody or control over any such documents. For the reasons discussed in our prior submissions and more fully herein, it should not be compelled to try to obtain them.

      As an initial matter, Konami US has searched for any records pre-dating service of the Complaint that reference the '129 patent, and has not located any. (Supp. Minerd Decl., Ex. A hereto, ¶ 3.) Konami US has also searched for any patent prosecution documents for Konami Japan's patents, and any communications with the patent attorneys who assisted Konami Japan in obtaining those patents (Jordan & Koda LLP), and located none. (*Id.* ¶¶ 3-4.) These search results are unsurprising given that Konami US is primarily a game distributor, not a game developer; as such, Konami US does not employ software engineers, patent attorneys, or patent analysts, and it is not involved in patent prosecution activities. (*Id.* ¶¶ 2, 5-6.)

      PDI, seeking to test these representations, subpoenaed the patent attorneys who prosecuted Konami Japan's patents, requesting the same documents sought in PDI's current letter. A privilege log served by the patent attorneys confirmed that all their communications were with an outside law firm in Japan hired by Konami Japan to assist with patent prosecution. (Ex. B hereto.) No communications were with Konami US or any person cited in PDI's letter. (*Id.*) Faced with these facts, PDI withdrew its subpoena to Jordan & Koda and took the depositions off-calendar. (Ex. C.) That should have been the end of the matter.

      Still undeterred, PDI renews its argument that Konami US should be ordered to obtain the patent documents held by Konami Japan or Konami Japan's attorneys. For support, PDI has searched at least a decade of public filings (2008 to present) as well as archived website

postings, in pursuit of any connections — whether historical or current — between Konami US and its indirect affiliate or ultimate parent in Japan. (*See* PDI's letter at 2-3.)

Konami US and Konami Japan are not interchangeable companies, contrary to PDI's arguments. Konami US employs about 85 employees, almost all of whom are located in Los Angeles where Konami US is headquartered. (Supp. Minerd Decl. ¶ 6.) Konami Japan, by contrast, has about 1,500 employees. (*Id.*) Konami US and its employees do not have access to the computer servers, hard copy documents, or other files of Konami Japan, and Konami US's 85 employees would not be expected to know (and could not reasonably know) most or everything known to Konami Japan's 1,500 employees. (Supp. Minerd Decl. ¶ 6.)

Konami Japan has a separate Intellectual Property Department that handles patent prosecution activities; Konami US and the Holdings Corporation do not. (Supp. Minerd Decl. ¶¶ 5-6.) Konami US has no right to demand access to Konami Japan's documents and has no practical need, in the course of Konami US's business, to obtain documents related to patent prosecution activities for any patents owned by Konami Japan or the Holdings Company. (*Id.*)[1]

Given this backdrop, PDI has the burden of showing by admissible evidence that Konami US has legal "control" over Konami Japan's documents. *Inline Connection Corp. v. AOL Time Warner Inc.*, C.A. No. 02-272, 2006 WL 2864586, at *1 (D. Del.) ("the party seeking production bears the burden of establishing control"). As the Court previously explained, PDI must show (1) alter ego status or (2) that "the litigating corporation acted with its sister in effecting the transaction giving rise to suit and is litigating on its behalf." (D.I. 176 at 3, quoting *Gerling Int'l Ins. Co v. Comm'r of Internal Revenue*, 839 F.2d 131, 141 (3d Cir. 1988); *see also Cradle IP LLC v. Tex. Instruments, Inc.*, C.A. No. 11-1254, 2013 WL 1794992, at *2 (D. Del.) (explaining that "allegations of [sister corp.'s] involvement in the development of the accused devices … do not relate to [the subpoenaed party's] legal right to obtain documents or information" and "instead… are consistent with [the subpoenaed party's] submission that [the sister corp.] is the entity from which [plaintiff] should seek certain technical documents").

PDI's proffered evidence does not meet its burden. For starters, the webpage excerpts marketing the Holdings Corporation and its subsidiaries do not support PDI's claim that Konami US is involved in game development or publishing "worldwide" or otherwise. (PDI's letter at 2 n.2 and cited exhibits.) The evidence as to Konami US is to the contrary. (Supp. Minerd Decl. ¶ 2; *see also* Minerd Decl. filed Feb. 16, 2018, at ¶¶ 2-5.) Similarly, the SEC filings do not show Konami US controls Konami Japan or that Konami US's business is "intertwined" or "interchangeable" with Konami Japan. (*See, e.g.*, D.I. 176 at 4 n.5, considering virtually identical Konami Holdings Corporation public filings.)

No evidence suggests that Konami US acted with Konami Japan or the Holdings Corporation to "effect the transaction" giving rise to PDI's claims. (*Compare* PDI's letter at 2 with *Gerling*, 839 F.2d at 141.) Konami US is accused of infringing PDI's patent by "testing or otherwise using" those games *in the United States*. (PDI's Infringement Contentions dated Jan. 12, 2018, at 3.) PDI's infringement theory is not based on joint infringement with Konami Japan or the Holdings Corporation, and any such claim would make no sense given that the

---

[1] The Holdings Corporation does not conduct business (it is a holding company only), and it has no employees or very few. (Supp. Minerd Decl. ¶ 6.) As the Court previously recognized, the Holdings Corporation's activities are thus not relevant to the analysis. (D.I. 176 at 3, n.4.)

gaming consoles are made by independent third parties (Sony and Nintendo), not by Konami Japan. Similarly, no evidence suggests that Konami US is litigating this case "on behalf of" Konami Japan — PDI selected the defendants and Konami US has not counterclaimed — and PDI targets *Konami US*'s distribution, testing and "use" of the games in the United States. (*Id.*; and *see* D.I. 176 at 11-12 (noting that Konami Japan's development of accused *DDR* games does not demonstrate that Konami US is litigating for Konami Japan).)

PDI then relies on four (current or former) Konami personnel to attempt to establish Konami US's control over Konami Japan's documents, without regard to time period and without addressing the settled law that overlap of personnel alone does not establish a subsidiary's control over a parent's or affiliate's documents. (PDI's letter at 2-3; *compare Playboy Entm't Grp. v. United States*, 1997 WL 873550, at *3-4 (D. Del.) (denying motion to compel subsidiary to produce non-party parent's records, notwithstanding that subsidiary's president was executive VP of parent and parent's CEO approved decisions of subsidiary); *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 263 (D. Del. 1979) (denying discovery of sister corporation's documents where no evidence existed that the companies had "identical Boards of Directors, or that their respective business operations are so intertwined as to render meaningless their separate corporate entities" (cited in *Gerling*, 839 F.2d at 142)).)

The facts do not support PDI's arguments in any event. *First*, Konami US's current President, Mr. Kubo, is not an officer, director or employee of Konami Japan. (Supp. Minerd Decl. ¶ 11.) His focus is solely on Konami US's operations in the Americas. (*Id.*) He is not involved in patent activities for Konami Japan. (*Id.*) PDI's assertion that Mr. Kubo is a "General Manager" of Konami Japan is unsupported by the webpages PDI cites. (PDI's Letter at 2, citing n.4 & Ex. 8 thereto (referring to Konami US and "US Branch, Sales").)

*Second*, Mr. Hayakawa is an officer of Konami Japan who also sits on Konami US's Board of Directors. He is not employed by Konami US, is not involved in Konami US's day-to-day activities, and has visited Konami US only twice during the last five years. (Supp. Minerd Decl. ¶ 10.) Nothing in the record reflects that Mr. Hayakawa's status as a board member (with Mr. Kubo) means that Konami US and Konami Japan are interchangeable or that Konami US has control over Konami Japan's patent documents. *Pennwalt Corp.*, 85 F.R.D. at 263. This is particularly true given Konami US's eighty-five employees — none of whom sits on a Board of Konami Japan — and Konami US's separate operations in California. (Minerd Decl. ¶ 12.) *Pitney Bowes, Inc. v. Kern Int'l, Inc.*, 239 F.R.D. 62, 67 (D. Conn. 2006) (finding insufficient overlap between companies sharing same owner, President and CEO where companies maintained separate executive boards and management teams responsible for their businesses).

*Third*, PDI references a former President of Konami US, Kazumi Kitaue, who has not been employed by any Konami entity since 2010. (Supp. Minerd Decl. ¶ 9.) Like Konami US's current President, Mr. Kitaue's focus during his tenure as President would have been on Konami US's operations in the Americas, not on patent matters for Konami Japan. (*Id.*) It therefore is unremarkable that Mr. Kitaue signed a contract between Konami US and Harmonix (*see* PDI's letter at 2); that says nothing about the dispute raised by PDI here.

*Fourth*, PDI relies on another former employee, Mari Tasaki, who headed Konami US's Legal Department and left Konami in December 2014 or January 2015. (*See, e.g.*, Supp. Minerd Decl. ¶ 13.) PDI relies primarily on declarations she submitted in unrelated

litigation *between 2008 and 2012*, none of which reflect she had any involvement in patent prosecution or that she knew anything about PDI's patent. (She did not.)[2] The one submission signed by Ms. Tasaki related to this litigation (a Power of Attorney appointing Konami US's outside counsel to seek *inter partes* review of the '129 patent) was signed as Vice President, Legal Department of *Konami US*. (Fox Decl. dated Feb. 16, 2018, Ex. A thereto.) PDI has been aware of Ms. Tasaki's role as in-house counsel for Konami US since at least 2013 and could have deposed her during her tenure at Konami (or afterwards by subpoena) but elected not to do so. No basis exists for PDI's continued speculation that her roles within Konami group companies make the companies interchangeable or impute some knowledge of PDI's patent to Konami US.

For all these reasons, PDI's renewed motion to compel should be denied.

## II.  PDI's Request to Extend Fact Discovery

Konami US opposes PDI's request for an order amending the longstanding Scheduling Order. PDI has only one deposition of Konami US outstanding, a Rule 30(b)(6) deposition for which Konami US has offered dates for more than a month. The deposition can be completed on March 27 or 29, or another mutually agreeable date in advance of the existing cut-off.[3]

Respectfully,

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

Enclosures
cc:   Clerk of Court (via hand delivery)
      All Counsel of Record (via electronic mail)

---

[2]   Two declarations signed by Ms. Tasaki were for trademark litigation against a former card distributor that was counterfeiting Konami's Yu-Gi-Oh! Card Game (the "*Upper Deck* case"). The parent holding company, Konami Corporation, was a plaintiff in that case, and Ms. Tasaki explained that her role at the time included oversight for trademark matters for Konami Corporation and Konami US (but not patent prosecution, which was not at issue in the *Upper Deck* case). *Konami Digital Entertainment, Inc. v. The Upper Deck Company*, C.D. Cal. No. 2:08-cv-6630 (filed Sept. 2008). Her other cited declaration (in *Walker Digital*, D. Del. No. 11-368) requested a stay pending reexam based on the burdens that gathering documents for 14 different videogames would impose. That declaration did not address which Konami entity held which documents for the 14 videogames, or who had legal control or access to them.

[3]   In Konami's view, no amount of additional discovery would provide PDI a basis for going forward given the Court's claim construction order; an extension of discovery would only increase the parties' costs and delay summary judgment or other resolution of the case.