# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HARMONIX MUSIC SYSTEMS, INC., ) <br> *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 12-1461-LPS-CJB |
| PRINCETON DIGITAL IMAGE ) <br> CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UBISOFT ENTERTAINMENT SA and ) <br> UBISOFT, INC., ) <br> ) <br> Defendants. ) | Civil Action No. 13-335-LPS-CJB |

## MEMORANDUM ORDER

Plaintiff Princeton Digital Image Corporation ("Plaintiff") has moved for relief against Defendant Konami Digital Entertainment Inc. ("Konami US") regarding certain discovery disputes. (D.I. 227; D.I. 249)[1] The Court[2] has considered the parties' briefs, (D.I. 229; D.I. 232; D.I. 253; D.I. 255), and heard argument on March 14, 2018, (D.I. 278 ("Tr.")).

## I. DISCUSSION

Plaintiff has two remaining ripe disputes that are directed to Konami US. (D.I. 243 at 1;

---

[1] The Court refers to the "D.I." number in Civil Action No. 12-1461-LPS-CJB, unless otherwise indicated.

[2] This case has been referred to the Court to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. (D.I. 30)

D.I. 253 at 1 & n.1) The Court will address each in turn.

### A. Plaintiff's Request Regarding Communications Between Konami US and Other Defendants

First, Plaintiff requests that Konami US produce communications between it and other Defendants concerning "the infringement by the Defendants' unrelated accused products, damages, or other issues where the Defendants' legal interests are not identical[.]" (D.I. 229 at 3 (citing RFP Nos. 19, 20 & 22)) Konami US has resisted production by invoking the common interest privilege, (D.I. 232 at 3), which protects: (1) communications made by separate parties in the course of a matter of common legal interest; (2) that are designed to further that common legal interest; where (3) the privilege has not been waived, *INVISTA N. Am. S.a.r.l. v. M&G Corp.*, Civil Action No. 11-1007-SLR-CJB, 2013 WL 12171721, at *5 (D. Del. June 25, 2013). It is Konami US's burden to show that the privilege has been established. *See id.*

It does seem that if there are communications between Defendants about whether their respective products do or do not infringe the patent-in-suit and why (and what damages might result), those communications will very likely be protected by the common interest privilege. But the briefing on this issue was not fulsome, and the Court realizes that it really has little information about: (1) how many such records/communications are being withheld on this ground of privilege; (2) what those records/communications look like; and (3) why it is exactly that those particular records/communications are, in fact, covered by the privilege. It would not be responsible for the Court to finally resolve the dispute (and to find Konami US has met its burden here) without at least reviewing some such records/communications and satisfying itself that the privilege in fact applies.

Thus, by no later than **April 30, 2018**, Konami US shall provide the Court with some indication (e.g., via privilege log or otherwise) of the scope of the records/communications that have been withheld on this ground. The Court will then follow up to request *ex parte* review of a representative sample of such records/communications, in order to determine if Konami US has met its burden here. *Cf. Circle Grp., L.L.C. v. Se. Carpenters Reg'l Council*, 1:09-cv-3039-WSD, 2011 WL 13214349, at *5 (N.D. Ga. Apr. 22, 2011).[3]

## B. Documents Relating to the Citation of the Patent-in-suit That Are In the Physical Possession of Non-party Konami Digital Entertainment Co., Ltd.

The second live Konami US-related dispute regards Plaintiff's request for documents and communications relating to the citation of Plaintiff's patent-in-suit (United States Patent No. 5,513,129) by Konami US, its affiliates and their patent attorneys. (D.I. 229 at 3-4 (citing, *inter alia*, RFP No. 11); D.I. 253 at 1-3)

### 1. The Parties' Positions

Plaintiff has alleged that during the prosecution of certain United States patents held by non-party Konami Digital Entertainment Co., Ltd. ("Konami Japan") (dating from as early as 2001 and through at least April 2004), certain Konami Japan patent attorneys and Konami Japan employees cited to, reviewed or were aware of the patent-in-suit. (D.I. 94 at ¶¶ 69-71) Plaintiff expects that the sought-after documents and communications will provide support for its claim of Konami US's pre-suit knowledge of the patent-in-suit (which, in turn, is relevant to Plaintiff's

---

[3] This same issue was also raised by Plaintiff as to Defendants Ubisoft Entertainment SA and Ubisoft, Inc. ("Ubisoft") in Civil Action No. 13-335-LPS-CJB. (D.I. 162 at 3, Civil Action No. 13-1335-LPS-CJB) The Court's order here will also apply to Ubisoft in that case. The Court will address Plaintiff's remaining live discovery disputes with Ubisoft in a separate Memorandum Order.

3

pending allegations of indirect and willful infringement).[4]

Konami US, however, has repeatedly stated that any documents relating to the prior citation of the patent-in-suit are not in its physical possession. Instead, it asserts that any such documents are in the possession of Konami Japan,[5] which is an affiliate of Konami US (Konami Japan and Konami US are both subsidiaries of the same parent). (D.I. 232, ex. 2 at ¶¶ 5, 11)

And so, this discovery dispute turns on whether Konami US should be required to obtain and turn over such documents (even if they are in the physical possession of Konami Japan). To obtain an order requiring such production, Plaintiff would need to show that these documents are nevertheless under the "control" of Konami US, pursuant to the meaning of Federal Rule of Civil Procedure 34(a)(1). Plaintiff asserts that it has made such a showing, in that it has demonstrated that "the litigating corporation [Konami US] acted with its sister [Konami Japan] in effecting the transaction giving rise to suit and is litigating [this suit] on [Konami Japan's] behalf[.]" *Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d 131, 141 (3d Cir. 1988); *see also* (D.I. 253 at 2).

## 2. The Court's Prior Order and Additional Facts Now of Record

The Court previously addressed this issue in an August 31, 2016 Memorandum Order (the "August 31 Order"). There it determined that Plaintiff had not yet met its burden to demonstrate Konami US's control over documents in the possession of Konami Japan. (D.I.

---

[4] The instant suit was filed in November 2012. (D.I. 1)

[5] According to Konami US, this is because the documents at issue relate to patent prosecution activities that were conducted by Konami Japan (and not by Konami US). (D.I. 232, ex. 2 at ¶ 11)

4

176)[6] Since then, Plaintiffs have added to the record on this control issue.

The record now clearly contains the following additional relevant facts relating to the above-described test for "control" under Rule 34:

> (1) With regard to the *Dance Dance Revolution* and *Karaoke Revolution* games that are relevant to Konami US's alleged infringement of the patent-in-suit (e.g., via Konami US's testing, use, publishing, distribution, offer for sale and sale of such games), Konami Japan owns the intellectual property as to those games and it licenses Konami US to publish and distribute the games in the United States. Konami US and Konami Japan are subsidiaries of Konami Corporation, a Japanese company, and are part of that company's global digital entertainment business system.
>
> (2) Hideki Hayakawa is the Chairman of the Board and one of two Directors of Konami US. He is also the President, Chief Operating Officer and a Director of Konami Japan. According to Konami US, Mr. Hayakawa is not involved in the day-to-day activities of Konami US.
>
> (3) Takayuki Kubo is the President and Secretary of Konami US and he is the other of the two Directors of Konami US. Mr. Kubo's association with Konami Japan, if any, is unclear to the Court (as will be further discussed below).
>
> (4) Mari Tasaki was the Vice President of Business and Legal Affairs of Konami US. She served in that role from at least November 2009 through either December 2014 or January 2015 (i.e., until more than two years after this lawsuit was filed). In that role, she worked at different times in both Los Angeles and Japan. For a period of time after this case was filed, Ms. Tasaki was a primary point of contact at Konami US for Konami US's outside legal team with regard to this matter.
>
> Ms. Tasaki also served in the past as the General Manager of the Legal Department for Konami Japan. She served in this role from at least December 2008 through at least October 2012.

---

[6] The Court incorporates by reference the substance of the August 31 Order into this Memorandum Order.

5

> Ms. Tasaki filed a number of declarations on behalf of Konami US in various U.S. litigation matters—declarations that are now before the Court (one in December 2008, one in November 2009 and one in October 2012). Ms. Tasaki executed each of those declarations while based in Japan. In certain of those declarations, Ms. Tasaki explained that based on her "work and responsibilities as General Manager of the Legal Department" of Konami Japan, she had "substantial first-hand knowledge of the business operations of" Konami US—including of the distribution of videogame products by Konami US in the United States. In the October 2012 declaration (filed in a patent litigation matter in this Court, *Walker Digital, LLC v. Capcom Entm't, Inc.*, Civil Action No. 11-368-RGA, D.I. 97 (D. Del. Oct. 3, 2012), wherein Konami US was a defendant) Ms. Tasaki listed her respective titles at Konami US and Konami Japan, and she referred to those two entities together collectively as "Konami." In the declaration, Ms. Tasaki addresses certain "technical documents, manuals and source code" that would be responsive to certain disclosures issued by the plaintiff. She then stated that the "Konami Legal Department has been working diligently to identify the key materials that may be used to respond to" these disclosures and that "Konami and its counsel" will be required to engage in detailed analysis of certain relevant materials. And she stated that "[b]ased on the work performed to date and my experience as General Manager of the [Konami Japan] Legal Department," she expected that it would take "several hundred hours of employee time to assist our outside counsel" in the preliminary phases of the case.
>
> Ms. Tasaki was employed by Konami-related companies beginning in 1998. Although Ms. Tasaki had legal training, she is not an attorney (either in the Japanese or United States legal systems). As is further noted below, other aspects of her work with Konami Japan and Konami US are unclear to the Court.

(D.I. 253, ex. 1 at 3, 6; *id.*, ex. 3 at 48-49, 65-66; *id.*, ex. 5 at 2; *id.*, ex. 6 at 1-2; *id.*, ex. 8 at 1-2; *id.*, ex. 9 at 1; *id.*, ex. 10 at 1; *id.*, ex. 11 at 1-3; *id.*, ex. 12 at KDE-DEF0000021; *id*, ex. 13 at KDE-DEF0000315; D.I. 255, ex. A at ¶¶ 10-13; Tr. at 26, 31)

### 3. Incomplete Information Provided by Konami US

As is noted above, there are certain portions of the record that remain unclear to the Court

regarding the "control" issue: those relating to the position and responsibilities of Ms. Tasaki and Mr. Kubo, and as to the respective roles of the Konami US and Konami Japan Legal Departments. The Court also believes that this lack of clarity is the fault of Konami US (and not Plaintiff, who admittedly bears the burden on the underlying legal issue). Below, the Court provides further information about the state of the record as to these issues.

### a. Ms. Tasaki and the Respective Legal Departments

The Court first addresses the record regarding Ms. Tasaki and the respective Legal Departments. In its initial letter brief, filed on February 14, 2018, Plaintiff had asserted that "employees of the Konami group in Japan also handle patent matters for [Defendant] Konami [US] in the United States." (D.I. 229 at 4) In support of this assertion, Plaintiff alleged that when Konami US "filed its petition for *inter partes* review of [Plaintiff's patent-in-suit], the Power of Attorney was signed by a Konami employee in Japan, and [Plaintiff] needs discovery concerning the knowledge of these employees of the [patent-in-suit]." (*Id.*) The employee Plaintiff was referring to was Ms. Tasaki, who had signed this Power of Attorney form on behalf of Konami US on November 18, 2014. (*Id.*, ex. 11) In this document, Ms. Tasaki listed her title at Konami US as "Vice President Legal Department"; the document also makes clear that she signed it while located in Tokyo, Japan. (*Id.* at 2) It was thus clear from Plaintiff's argument that Plaintiff believed that Ms. Tasaki (in part because she was located in Japan when she executed this document) might have been affiliated not only with Konami US, but also with Konami Japan. And Plaintiff was suggesting that because Ms. Tasaki had oversight regarding patent matters with Konami US, she may also have played a similar role at Konami Japan (and in that role, may have gained knowledge of the patent-in-suit).

7

At the time, Ms. Tasaki's role was certainly relevant to the issue of "control" that is now before the Court. As was previously noted above, the test for "control" requires that, *inter alia*, Plaintiff show that in this case, Konami US is litigating "on behalf of" Konami Japan. If for a portion of this litigation, Ms. Tasaki was not only (1) serving as a primary point of contact at Konami US for Konami US's attorneys in this lawsuit, but was also (2) managing and overseeing Konami Japan's Legal Department at the same time, then (3) that would be helpful to Plaintiff's ability to show the requisite "control." Put differently, it might indicate that Konami US's and Konami Japan's Legal Departments were, in essence, managing this litigation together. That would also seem to gibe with the way Ms. Tasaki described her role (and the role of the Legal Departments of the two companies) in the October 2012 *Walker Digital* declaration described above.[7]

Another reason why Ms. Tasaki's role was important relates to how—even if Plaintiff obtains the sought-after documents—Plaintiff would be able to show that such documents are relevant to its claims of indirect or willful infringement. If there are documents in Konami Japan's possession that show that Konami Japan employees had pre-suit knowledge of the patent-in-suit, that fact alone would not help Plaintiff. Plaintiff needs to show that *Konami US* had pre-suit knowledge of that patent. But if Ms. Tasaki held important roles in the Legal Departments of both Konami Japan and Konami US at the time of suit here, and if *she* had pre-suit knowledge of the patent-in-suit, then her knowledge would almost surely be imputed to

---

[7] *Cf. Gerling*, 839 F.2d at 141 ("Where the relationship is such that the [litigating entity] can secure documents of the [related entity] to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the [litigating entity] to deny control for purposes of discovery by an opposing party.").

Konami US (even if she gained such knowledge while acting on behalf of Konami Japan). *Cf. Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, Civil Action No. 15-819-LPS-CJB, 2016 WL 4770244, at *10 (D. Del. Aug. 12, 2016) (citing cases).[8]

However, in its responsive letter, which was filed on February 16, 2018, Konami US was firm. (D.I. 232) It clearly stated that "Plaintiff's assertion that 'employees of the Konami group in Japan also handle patent matters for Konami [US] in the United States' *is unsupported*." (D.I. 232 at 4 (emphasis added)) Konami US explained that "Plaintiff miscites [the November 2014] Power of Attorney that Plaintiff claims was 'signed by a Konami employee in Japan'"; in actuality, Konami US explained, "the employee[, Ms. Tasaki] signed the document as Vice President of Konami US while spending time with family in Japan on a leave of absence, before leaving Konami one month later." (*Id.*; *see also id.*, ex. 3 at ¶¶ 2-4) Konami US said nothing about whether Ms. Tasaki *also* either (1) was then an employee of Konami Japan, or (2) had ever in the past been an employee of Konami Japan. Indeed, the tone and tenor of this February 16, 2018 letter suggested that Ms. Tasaki had *not* been associated with Konami Japan—and that if Plaintiff thought otherwise (e.g., due to the fact that Ms. Tasaki had signed the Power of Attorney while in Japan) it was sorely mistaken. (Tr. at 11 (Plaintiff's counsel noting that after it reviewed

---

[8] There is also now evidence of record that although Konami US's Legal Department does not have an Intellectual Property Department, (D.I. 255, ex. A at ¶ 6), Konami Japan's Legal Department does, (*id.*). And Konami US has applied for U.S. patents that were later assigned to Konami Japan, including during time periods after the date of initiation of the instant suit. (*See, e.g.*, Tr. at 41-42); *see also* U.S. Patent No. 9,911,287 (filed on November 26, 2013 and issued on March 6, 2018). If Konami US did not have an Intellectual Property Department at the time such patents were being prosecuted, but Konami Japan's Legal Department did, that suggests that Konami Japan employees may have been working on Konami US's behalf regarding U.S. patent prosecution efforts. If such persons exist, and such persons also had pre-suit knowledge of the patent-in-suit, then their knowledge may be imputed to Konami US.

9

Konami US's response, it understood Konami US to be indicating that Ms. Tasaki "was an employee just of [Konami US] who coincidentally happened to have gone to Japan to visit family, and that was the reason why the [November 2014 Power of Attorney] was signed and indicated that it was executed in Japan"))

It turns out, though, that Ms. Tasaki *had been* a Konami Japan employee. The Court now knows, pursuant to certain documents cited above, that Ms. Tasaki managed Konami Japan's Legal Department from at least 2008 through at least October 2012. And it also turns out that Ms. Tasaki (and perhaps others) working in the Konami Japan Legal Department *did* "handle patent matters" for Konami US during those periods of time—a fact demonstrated by the content of some of the declarations listed above. Thus, Plaintiff's prior suggestion that "employees of the Konami group in Japan also handle patent matters for Konami [US]" was not "unsupported"—as Konami US indicated in its February 16, 2018 letter. (D.I. 232 at 4) Instead, it was very much "supported"—albeit by factual information that Konami US had not yet shared with Plaintiff or with the Court.

Moreover, if Ms. Tasaki continued in her role as General Manager of the Legal Department of Konami Japan on and after November 13, 2012 (the date that this suit was filed), then *as to this very case*, she would clearly have been an "employee[]" of Konami Japan (one who managed Konami Japan's *Legal Department*, no less) who also "handle[d] patent matters" for Konami US. It is not obvious from the current record when Ms. Tasaki's tenure as General Manager of Konami Japan's Legal Department ended. (Tr. at 25 (Defendant's counsel asserting that Ms. Tasaki had been "replaced" in her role at Konami Japan as of November 2014, but that "at times prior to the signing" of that document she "played two roles"); *id.* at 27-28) But the

10

Court intends to find out.

### b. Mr. Kubo

Mr. Kubo's association with Konami Japan is also still unclear to the Court. And obtaining clarity on Mr. Kubo's association with Konami Japan is similarly relevant to the Rule 34 "control" issue. If Mr. Kubo has or had a substantial executive role with Konami Japan, that would mean that both of Konami US's Directors (that is, Mr. Kubo and Mr. Hayakawa) would also have been high-level executives at Konami Japan during the time of this litigation. The fact of such shared Directors/executives could, in turn, help Plaintiff demonstrate that Konami US "acted with its sister [Konami Japan] in effecting the transaction giving rise to suit and is litigating [this suit] on [Konami Japan's] behalf" for purposes of showing the requisite "control." *Gerling*, 839 F.2d at 141.

On this topic, Plaintiff submitted a March 16, 2018 document, issued by Konami Japan, which is titled "Announcing Official Personnel Changes" (the "March 2018 personnel changes document"). (D.I. 253, ex. 8 at 1-2 ("Konami [Japan] hereby announces the following personnel changes.")) The two-page document lists 10 people who have received a "[n]ew [p]osition" and goes on to list each person's new title, along with their former title. (*Id.*) At least eight of the 10 people on this list appear to clearly be employees of Konami Japan. (Tr. at 40) Mr. Kubo's name is last on the list. (D.I. 253, ex. 8 at 2) There, his title was noted to have changed to "General Manager, US Branch, Sales Division (Director, President Konami Digitial Entertainment, Inc)[.]" (*Id.*)

One way to interpret this document is to conclude that (as Plaintiff argues) Mr. Kubo (like most or all of the other employees listed) is a Konami Japan employee. Under this reading,

11

the document is explaining that Mr. Kubo holds the title of "General Manager, US Branch, Sales Division" at Konami Japan (while also concurrently serving as a "Director" of Konami US). (*Id.*) And, if all one had was this document, this reading would surely make sense. After all, the document was disseminated by Konami Japan, and it otherwise largely includes reference to Konami Japan employees. And why would Mr. Kubo's title at a U.S.-based company (Konami US) include the seemingly redundant term "US Branch"? Such a title suggests that there are other *non-U.S.* branches at whatever company employs Mr. Kubo. And yet the Court has been told by Konami US that "almost all [of its employees] are located in the Los Angeles area where Konami US is headquartered." (D.I. 255, ex. A at ¶ 6) So again, one would assume from this new title that Mr. Kubo works for a non-U.S.-based company (like Konami Japan)—and that is why his title is listed as "General Manager, U.S. Branch, Sales Division."

Konami US, however, suggests a different reading. Its counsel acknowledges that the language used in the March 2018 personnel changes document is "imprecise"; counsel suggests, however, that the reference to "General Manager, US Branch, Sales Division" is *not* a reference to a position or title. (Tr. at 38) Instead, this language was simply meant to be a "description of [Mr. Kubo's] role" at Konami US since "there's not a legal entity or a division known as 'U.S. [B]ranch Sales Division' " at Konami US. (*Id.*) According to counsel, the document is not indicating that Mr. Kubo is a Konami Japan employee. (*Id.* at 39 ("My understanding is that [Mr. Kubo is] not a Konami Japan employee or officer."))

Additionally, Konami US submitted a declaration from a Senior Director of its Legal Department, Nobuko Minerd, which flatly states that Mr. Kubo is "not an employee, officer or director of Konami Japan[.]" (D.I. 255, ex. A at ¶ 11) The Court notes, however, that this

12

statement is phrased in the present tense. Now mindful that it must be wary of Konami US's phraseology—in light of the Court's prior experience with Konami US's description of Ms. Tasaki's role—this causes the Court to question whether Mr. Kubo ever *has previously been* (including during the time period of this litigation) an "employee, officer or director of Konami Japan." The Court also wonders whether Mr. Kubo has some other current or prior association with Konami Japan that simply does not fall into the category of "employee, officer or director." The submitted declaration from Mr. Minerd is not clear on this front, and again, the Court intends to get clarity as to this portion of the record.

### 4. Additional Steps Needed to Resolve This Dispute

The Court will now address how it intends to resolve this dispute, in light of the uncertainty in the record set out above.

On the one hand, Plaintiff has had time to develop its theory as to why it thinks that Konami US has control over Konami Japan's records. Nothing the Court sets out below should be interpreted as giving Plaintiff, at this late stage, the ability to pursue additional discovery regarding *new theories* of control that have not yet been articulated to the Court.

On the other hand, as to the role of particular individuals (Ms. Tasaki and Mr. Kubo) whom Plaintiff has asserted are key to its theory of control, and as to the role of the companies' respective Legal Departments, Plaintiff and the Court have been provided with an incomplete picture. Indeed, as to certain of those issues, Konami US has made statements to Plaintiff and to the Court that were, at a minimum, extremely misleading. In light of this, Plaintiff should have the opportunity to supplement the evidence on those topics, so that it and the Court have a fair and complete record on which to evaluate Plaintiff's theory of control.

13

Therefore, Plaintiff may take additional, limited discovery from Konami US on the following topics:

> (1) Ms. Tasaki's titles, employment duties and/or association with Konami US and Konami Japan, and the length of Ms. Tasaki's employment with those companies.
>
> (2) The extent to which Konami Japan's Legal Department worked on patent litigation matters (including this matter) and patent prosecution matters involving Konami US during the time period of this litigation, and the extent to which Ms. Tasaki or other members of the Konami Japan Legal Department had pre-suit knowledge of the patent-in-suit.
>
> (3) Mr. Kubo's titles, employment duties and/or association with Konami US and Konami Japan (if any).

By no later than **April 30, 2018**, the parties shall jointly submit a report regarding the status of that discovery. After such discovery is complete, the Court can determine how and when the parties should supplement the record on this Rule 34 control issue.[9]

## II. CONCLUSION

For the foregoing reasons, the Court will not definitively resolve either pending discovery dispute between Plaintiff and Konami US. Instead, it will resolve the issues in the near term after obtaining the additional information described in this Memorandum Order.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly

---

[9] In light of the above, the Court will entertain a future petition from Plaintiff that Konami US be required to reimburse it for the reasonable cost of this additional discovery. Depending on the outcome of such discovery, the Court reserves the right to determine that Konami US and/or its counsel should be subject to additional sanctions for their litigation conduct as to this issue, pursuant to the Federal Rules of Civil Procedure and the Court's inherent authority.

14

proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **April 19, 2018,** for review by the Court, along with a motion for redaction that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

April 16, 2018

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE